IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CARLOS COY,                        §
TDCJ-CID NO. 1110642,              §
                                   §
            Petitioner,            §
                                   §
v.                                 §
                                   §        CIVIL ACTION NO. H-07-0302
NATHANIEL QUARTERMAN, Director,    §
Texas Department of Criminal       §
Justice, Correctional              §
Institutions Division,             §
                                   §
            Respondent.            §

<u>**MEMORANDUM OPINION AND ORDER**</u>

Petitioner, Carlos Coy, is a person in state custody who brings this action seeking a Writ of Habeas Corpus (Docket Entry No. 1).  Pending before the court is Respondent Nathaniel Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 8).  For the reasons stated below, respondent's motion will be granted, and Coy's Petition for a Writ of Habeas Corpus of a Person in State Custody will be dismissed.

**I.  Background**

The facts of Coy's crime were summarized by the First Court of Appeals as follows:

In September 2001, the then nine-year-old complainant told her mother about sexual acts [Coy] had performed on her.  The mother took her daughter to the authorities, who began an investigation of the complainant's allegations.  The evidence at trial showed that [Coy]'s daughter had invited the

complainant to spend the night at [Coy]'s home on September 1, 2001. Both children were watching television in [Coy]'s bedroom when [Coy] entered the room and began watching television with the children. While sitting on the bed, [Coy] inappropriately touched and rubbed [the complainant]. After this incident, the complainant left [Coy]'s bedroom.

The children eventually entered the daughter's bedroom. Both children climbed into bed and began watching television. After [Coy]'s daughter fell asleep, [Coy] entered the room, sat on the bed, reached under the covers, and again inappropriately touched her. Eventually, [Coy] sexually assaulted the complainant by causing her sexual organ to come into contact with his mouth. The complainant testified that [Coy] persisted in this conduct for approximately one minute.

The complainant did not, after this incident, stay overnight at [Coy]'s home as planned, but returned home. The following morning, she informed her mother what occurred at [Coy]'s home, and the authorities were contacted to investigate the incident.[1]

On May 30, 2002, a jury convicted Coy of aggravated sexual assault and sentenced him to forty-five years' imprisonment and a $10,000 fine.[2] His conviction was affirmed on direct appeal on November 6, 2003, and his petition for discretionary review was refused on June 30, 2004.[3] On September 14, 2005, Coy filed his first state habeas petition arguing that his attorney provided

---

[1]Coy v. State, No. 01-02-00593-CR (Tex. App. – Houston [1st Dist.] Nov. 6, 2003, pet. ref'd) (unpublished), attached to Ex parte Coy, Appl. No. WR-65,301-01, pp. 54-55.

[2]Ex parte Coy, Appl. No. WR-65,301-01, p. 2.

[3]Coy v. State, No. 01-02-00593-CR (Tex. App. – Houston [1st Dist.] Nov. 6, 2003, pet. ref'd) (unpublished); Coy v. State, PDR No. 1969-03.

ineffective assistance at trial.[4]  This petition was dismissed for failure to comply with the Texas Rules of Appellate Procedure on July 26, 2006.[5]  Coy then filed a second state habeas petition, which also argued ineffective assistance at trial.[6]  The trial court held a hearing, entered 30 pages of findings of fact and conclusions of law, and recommended that petitioner's applications be denied.[7]  The Texas Court of Criminal Appeals denied habeas relief without written order on January 17, 2007.[8]

Coy filed an application for a writ of habeas corpus in this court on January 19, 2007.[9]  On April 5, 2007, respondent filed the pending motion for summary judgment (Docket Entry No. 8).  Coy filed his response to the motion for summary judgment on April 20, 2007 (Docket Entry No. 10).

## II.  **Standards of Review**

### A.  **Habeas Corpus**

A court cannot grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court decision

---

[4]Ex parte Coy, Appl. No. WR-65,301-01, pp. 8-10.

[5]Ex parte Coy, Appl. No. 65,301-01, at cover.

[6]Ex parte Coy, Appl. No. 65,301-02, pp. 7-8,

[7]Ex parte Coy, Appl. No. 65,301-01, pp. 220-25.

[8]Ex parte Coy, Appl. No. 65,301-02, at cover.

[9]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1.

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Courts review pure questions of law and mixed questions of law and fact under subsection (d)(1) and questions of fact under subsection (d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 120 S. Ct. 1495, 1523 (2000). A decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> The court "*cannot* reverse the denial of habeas relief simply by concluding that the state court decision applied clearly established federal law *erroneously*." <u>Martin</u>, 246 at 476 (citing <u>Williams</u>, 120 S. Ct. at 1521) (emphasis in original). "Determination of a factual issue made by a State court shall be presumed to be correct," and the prisoner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-4-

**B.    Summary Judgment**

Summary judgment is warranted when evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 106 S. Ct. at 2553.  In response to such a showing the nonmoving party must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating the existence of genuine issues of material fact that must be resolved at trial.  Id.

While "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000), the rule applies only to the extent that it does not conflict with the habeas rules. Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002), overruled on other grounds by Tennard v. Dretke, 124 S. Ct. 2562 (2004). Therefore, 28 U.S.C. § 2254(e)(1), which mandates that findings of fact made by a state court are "presumed to be correct," overrides the ordinary rule that in a summary judgment proceeding all disputed facts must be construed in the light most favorable to the

nonmoving party.  Id.  Unless petitioner can rebut the presumption of correctness by clear and convincing evidence as to the state court's findings of fact, they must be accepted as correct."  Id.

### III.  **Analysis**

As grounds for relief, Coy alleges that his trial counsel was unconstitutionally ineffective because

> 1.  Counsel failed to object to references to the complainant as the "victim" during the opening statement, testimony, and summation;
>
> 2.  Counsel failed to file a motion in limine and object to lay and expert opinion testimony that, in essence, the complainant was telling the truth about the sexual assault;
>
> 3.  Counsel failed to ask the complainant's mother about whether she intended to file a civil lawsuit against [Coy];
>
> 4.  Counsel opened the door or failed to object to irrelevant, prejudicial testimony [that Coy was grooming his daughter for future sexual assaults, that Coy beat women and used drugs, and that the name of Coy's record company is "Dope House Records"];
>
> 5.  Counsel failed to object to testimony that the complainant's grandfather, on being told by his wife that [Coy] molested the complainant, said that he could not take it and died of a heart attack the next day;
>
> 6.  Counsel failed to object to argument that the complainant's testimony regarding the offense was uncontradicted; [and]
>
> 7.  Counsel invited and failed to properly object to argument attacking him for trying to hide the truth and keep [Coy] out of jail for a fee.[10]

---

[10]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, pp. ii-iii.

These are the same arguments Coy made in his state habeas applications.[11]

Under the standard established by <u>Strickland v. Washington</u>, 104 S. Ct. 2052, 2064 (1984), a defendant asserting ineffective assistance of counsel must first show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." The defendant must also show that "there was a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." <u>Id.</u> at 2068. Both prongs of this test must be met to be entitled to habeas relief. With regard to the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Id.</u> at 2065 (internal quotations omitted). Regarding the second prong, a "mere possibility" that a different result might have occurred is not enough to demonstrate prejudice. <u>Lamb v. Johnson</u>, 179 F.3d 352, 359 (5th Cir. 1999).

Because Coy raised these claims in his state writ, which the Texas Court of Criminal Appeals denied (as opposed to dismissed),

---

[11]<u>Ex parte Coy</u>, Appl. No. WR-65,301-01; <u>Ex parte Coy</u>, Appl. No. WR-65,301-02.

the Texas Court of Criminal Appeals' decision was "on the merits."[12] Therefore, this court cannot grant habeas relief absent a determination that the state court's denial of relief was contrary to, or involved an unreasonable application of, Strickland or unless the decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). See also Busby v. Dretke, 359 F.3d 708, 717 (5th Cir. 2004).

With regard to the entire trial, the state habeas court found that Coy's attorney limited his objections in order to establish credibility with the jury, but still objected when he believed that it was necessary.[13]  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 123 S. Ct. 1029, 1041 (2003).

---

[12] See Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits.").

[13] Ex parte Coy, Appl. No. WR-65,301-01, pp. 221-22.

**A.    Referring to the Complainant as a "Victim"**

Coy first argues that his trial attorney was ineffective because he failed to make running objections when the complainant, O.S., was referred to as a "victim" during the prosecutor's opening statement and by various witnesses.[14]  Coy's counsel filed a motion in limine to preclude references to O.S. as a victim but the trial court overruled the motion.[15]

Coy argues that his trial counsel was constitutionally ineffective for failing to object when four witnesses referred to O.S. as a "victim."[16]  The first instance of this reference took place during the examination of Officer David Milligan, the officer who took the initial crime report.[17]  The following exchange occurred:

> Q:    Did you find out whether or not the victim was at the house?
>
> A:    Yes, she wasn't at the house.
>
> Q:    And were you told that the victim's name was [O.S.]?
>
> A:    Yes.
>
> Q:    Okay.  Now, because the victim was not at the house, what did you do as a patrol officer?  What is, I guess, your role at that point?

---

[14]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, pp. 9–11.

[15]Reporter's Record, Vol. 6, p. 22.

[16]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, pp. 9–11.

[17]Id. at 9.

> A:   Well, even though the – the victim or
>      complainant would not actually be present, I'm
>      required to document my findings . . .[18]

Coy next points to the following exchange between the prosecutor and Detective Heidi Ruiz:

> Q:   And who did you speak with on the 7th?
>
> A:   On the 7th I spoke to Maryvel Ramirez, the
>      mother of the complainant.
>
> Q:   The mother of the complainant?
>
> A:   Right.
>
> Q:   Okay.   And what was the basis of the
>      conversation you were having with her at the
>      time? . . . Did you set up a time for you to
>      meet with her and with the victim in the case?
>
> A:   Yes, I did.
>
> Q:   And when was that?
>
> A:   We set up a time to meet with the victim, the
>      victim's father and the victim's aunt on the
>      10th of September.[19]

Coy also argues that his trial attorney should have objected during the following exchange between the prosecutor and Nicoya McLemore, the complainant's teacher:

> Q:   Ms. McLemore, I want to direct your attention
>      to the victim in this trial . . . Do you know
>      [O.S.]?
>
> A:   Yes, I do.
>
> Q:   How do you know her?
>
> A:   She's a student in my class.

---

[18]Reporter's Record, Volume 10, p. 193.

[19]Reporter's Record, Volume 11, pp. 170–71.

Q:   And she's in your fourth grade class this year?

A:   Yes.

Q:   And you've had her as a student for how long?

A:   This is my first year with her.

Q:   And when you say first year, when did the first of the year start?

A:   It started in August.

Q:   In August, 2001?

A:   Yes, ma'am.

Q:   So, you've known her since that point in time and basically spend six to seven hours a day with her, is that right?

A:   Yes, ma'am.

Q:   Ms. McLemore, I want to ask you about – you are aware because of this trial that there was an offense against [O.S.] that occurred on September the 1st of 2001, is that right?

MR. LEWIS:   Your honor, I'm going to object. That's an improper statement.   An allegation – that's the province of the jury to decide that.

THE COURT:   Sustained as to the form of the question.[20]

Finally, Coy argues that his attorney should have objected when the prosecutor asked O.S.'s mother:

Q:   Now, she – she has had quite a bit of absences in the fourth grade this year.

A:   Correct.

.  .  .

_____

[20]Reporter's Record, Volume 12, pp. 176–78.

-11-

> Q:   Okay.   And many of these have been related to
>      issues from her being a victim; is that right?
>
> A:   Yes, ma'am.[21]

Three pages later in the trial transcript the prosecutor asked
O.S.'s mother:

> Q:   So, I want to ask you any questions you might
>      have had with [John Hernandez], after you found
>      out about your daughter being molested by the
>      defendant.
>
>      MR. LEWIS:   Your Honor, I'm going to object.
> Miss Oncken's making this reference.   She's assuming
> facts that haven't been decided yet.   That's a
> jury's province.   It's an allegation, still, at this
> time.
>
>      THE COURT:   Sustained as to the form of the
> question.[22]

The state habeas court found that Coy's attorney did not
object to references of O.S. as a "victim" because he had "decided
to strategically limit his objections during trial, but nonetheless
determined to make an objection if he believed use of the term
'victim' was particularly harmful or prejudicial" and that Coy's
counsel recognized that state case law did not directly support his
motion in limine.[23]   Coy has not overcome the presumption of
correctness with regard to this factual finding.   28 U.S.C.
§ 2254(e)(1).   Coy's attorney testified to this effect at the

---

[21]Reporter's Record, Volume 16, pp. 28-29.

[22]Id. at 32.

[23]Ex parte Coy, Appl. No. WR-65,301-01, pp. 222-23.

-12-

habeas hearing,[24] and the record reflects that Coy's attorney repeatedly reminded the jury that it was to decide whether O.S.'s allegations were true but did not object each time O.S. was referred to as a "victim" in passing.

The state court also found that Coy failed to show that his counsel's conduct fell below an objective standard of reasonableness or that he was prejudiced by his counsel's conduct – i.e., the state court found that Coy failed to make a Strickland showing.[25]  This finding is reviewed under section 2254(d)(1). Martin v. Cain, 246 F.3d 471, 475 (5th Cir. 2001).  The state court found that the strategy employed by Coy's attorney was reasonable. Given Strickland's strong presumption that counsel's actions fall within the wide range of reasonable professional assistance, this court cannot conclude that the state court's decision was an unreasonable application of the first prong of the Strickland test. Furthermore, merely referencing O.S. as a "victim" does not undermine confidence in the outcome of the trial, making the state court's decision a reasonable application of the Strickland test's second prong.  Cf. Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992) ("[Petitioner's counsel] could reasonably have decided not to risk antagonizing the jury by objecting, or he could have decided that his best strategy was to let his own closing argument speak

---

[24]Reporter's Record, Writ Hearing, Vol. 1, p. 41.

[25]Id. at 222, 240.

-13-

for itself.  Whatever the reason he chose not to object, we do not view his conduct as ineffective assistance.").

Coy also argues that his counsel was ineffective for failing to object when, during her opening statement, the prosecutor referred to the complainant as "the victim in the case" and made other similar references.[26]  "A prosecutor's assertion of what he believes the evidence will show and has shown is not error." Ortega v. McCotter, 808 F.2d 406, 410 (5th Cir. 1987) (citing United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978) ("an attorney's statements that indicate his opinion or knowledge of a case as therefore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence")).  Here, the prosecutor opened by informing the jury that

> [t]his is what we call opening statement.  Each side has the opportunity at this time to tell you what we expect from each side the evidence and testimony to show in the case.  So I'm going to . . . hopefully give you a better preview of what the testimony and the evidence you can expect to see in this courtroom in the following days in front of you.[27]

The prosecutor also repeatedly told the jury "you will hear testimony that . . ." and that the complainant "will tell you how it happened."[28]  The prosecutor closed by saying "So, the evidence

---

[26]Reporter's Record, Volume 10, pp. 9–18.

[27]Id. at 8.

[28]Id. at 12–36.

and testimony that I expect you'll hear from the witnesses is, as
I've told you, that [O.S.] was molested by [Coy] on the night of
September 1, 2001. . . ."[29]   Not objecting to the prosecutor's
remarks was consistent with the trial counsel's strategy of
limiting his objections except when particularly harmful.   The
court therefore concludes that the state court's finding that Coy
did not make the showing required by Strickland with regard to the
prosecutor's opening statements was not contrary to, or an
unreasonable application of, the standards provided by clearly
established federal law.[30]   See also Boyde v. California, 110 S. Ct.
1190, 1200 (1990) ("[T]he arguments of counsel . . . must be judged
in the context in which they are made.").

**B.   Testimony that the Complainant was Telling the Truth**

Coy next argues that his trial counsel was ineffective for
failing to file a motion in limine to exclude opinion testimony
that O.S. was telling the truth about the sexual assault and for
not repeatedly objecting to such testimony.[31]   The first instance
Coy points to occurred during cross-examination of O.S.'s mother,
Maryvel Ramirez, when Coy's trial counsel asked Ms. Ramirez:

---

[29]Id. at 36.

[30]All of Coy's claims regarding the prosecutor's statements
during opening and summation are denied for this reason.

[31]Petition for a Writ of Habeas Corpus of a Person in State
Custody, Docket Entry No. 1, pp. 11–15.

> Q:   . . . And if I got your testimony right, you
>       told [your sister] that you were sure that [the
>       molestation] had happened; is that right?
>
> A:   My sister?
>
> Q:   Right.
>
> A:   I never told her I was – I mean, we knew it was
>       true.[32]

The state habeas court found that Coy's attorney elicited these statements "for the purpose of committing Ramirez to her prior testimony, so that [he] could subsequently impeach Ramirez with the previous inconsistent statement reflected in the complainant's medical records [that she was not sure the sexual assault actually occurred]."   The state court further found that this strategy was reasonable and that Coy's trial counsel therefore had no reason to object to Ms. Ramirez's statements.[33]   The court concluded that Coy failed to show both prongs of the Strickland test.[34]

Coy argues that it "is illogical, not to mention an unreasonable strategy, for counsel not to object to inadmissible, prejudicial testimony for the purpose of impeaching the witness when he could exclude the testimony in the first instance by a motion in limine or an objection."[35]   However, by impeaching

---

[32]Reporter's Record, Volume 10, p. 152.

[33]Ex parte Coy, Appl. No. WR-65,301-01, p. 224.

[34]Id. at 240–41.

[35]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 12.

-16-

Ms. Ramirez's credibility on this issue Coy's counsel stood to discredit her entire testimony.  The very statements Coy complains about, that Ms. Ramirez believed O.S. was telling the truth, were the same statements used to impeach her by confronting her with prior contradictory statements.  "Given the almost infinite variety of possible trial techniques and tactics available to counsel, [the court] is careful not to second guess legitimate strategic choices."  <u>Yohey v. Collins</u>, 985 F.2d 222, 228 (5th Cir. 1993). The court therefore concludes that the state court's finding that the trial counsel's strategy was reasonable -- and that Coy therefore failed to show the first prong of the <u>Strickland</u> test -- was a reasonable application of Federal law as decided by the Supreme Court.

Coy also argues that his attorney should have objected when the prosecutor asked Ms. Ramirez "about any conversations [she] might've had with [John Hernandez], after [she] found out about [her] daughter being molested," and Ms. Ramirez replied that she "told him that [Coy] molested [O.S.]."[36]  The state court found that Coy failed to meet both prongs of the <u>Strickland</u> test with regard to this claim.[37]  The record reflects that Coy's attorney objected directly after the prosecutor's question, reminding the jury that

_____

[36]Reporter's Record, Volume 16, pp. 31, 35; Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 12.

[37]<u>Ex parte Coy</u>, Appl. No. WR-65,301-01, p. 240.

-17-

it was still to be decided whether O.S. had been molested by Coy.[38]
Furthermore, to the extent that Ms. Ramirez was stating her belief
that O.S. was telling the truth about the crime, such testimony was
duplicative of evidence properly elicited during her cross-
examination, making such an objection of little value.  See Romero
v. Lynaugh, 884 F.2d 871, 879 (5th Cir. 1989) ("[Petitioner] points
to seven instances in which [his counsel] is said to have failed to
block the receipt of evidence.  In each instance, the evidence was
either clearly admissible or duplicative of evidence properly
received.").  The court therefore concludes that the state court's
decision was a reasonable application of the Strickland test.[39]

Coy also argues that his trial attorney was ineffective for
failing to object when Ms. Ramirez testified that her father died
the day after learning that "[Coy] had molested [O.S.]."[40]  The
state court found that this statement was not a direct opinion
about O.S.'s truthfulness and was therefore not objectionable, and
that Coy's attorney did not object to this testimony because he did

---

[38]Reporter's Record, Volume 16, p. 31.

[39]Coy also complains of Ms. Ramirez's testimony that she was
seeing a therapist to help her deal with Coy's "molesting [her]
child."  Id. at 44.  To the extent that this constitutes an
opinion regarding the veracity of O.S.'s allegations, it too is
duplicative of evidence properly elicited earlier.  The same is
true for Coy's complaint that Officer Milligan and John Hernandez
testified that Ramirez told them that she believed her daughter
had been molested.  Reporter's Record, Vol. 10, p. 194; Vol. 14,
p. 22.

[40]Reporter's Record, Vol. 16, p. 47.

-18-

not consider it improper opinion testimony and because he believed that it was not inconsistent with his defense theories.[41] The state court concluded that Coy failed to show both prongs of the <u>Strickland</u> test on this claim.[42]    Given <u>Strickland</u>'s strong presumption that counsel's actions fall within the wide range of reasonable professional assistance, this court cannot conclude that the state court's decision was an unreasonable application of the <u>Strickland</u> test.

Coy next argues that his trial counsel was ineffective for failing to object when O.S.'s teacher, Nicoya McLemore, testified that O.S. is "very honest" and that she "can always take anything [O.S.] says as the God's honest truth."[43]    He also claims that his attorney should have objected when the school nurse, Cynthia Womack, testified that she knew that "something had happened to [O.S.]" based on O.S.'s frequent trips to the infirmary.[44]    The state court found that Coy failed to satisfy both prongs of the <u>Strickland</u> test.[45]    During the state habeas hearing Coy's trial

---

[41]<u>Ex parte Coy</u>, Appl. No. WR-65,301-01, pp. 225-26.

[42]<u>Id.</u> at 240.

[43]Reporter's Record, Vol. 12, p. 181.  Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 13.

[44]Reporter's Record, Vol. 12, pp. 190-91.  Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 13.

[45]<u>Ex parte Coy</u>, Appl. No. WR-65,301-01, pp. 242.

counsel testified that he made the strategic decision not to be hostile to O.S. because he believed the jury would find it more palpable.[46]   This falls within the wide range of reasonable professional assistance.   The court therefore concludes that the trial court's decision was a reasonable application of <u>Strickland</u>.

Finally, Coy argues that his attorney should have objected when Susan Szczygielski, O.S.'s therapist, testified about O.S.'s behavior "since the abuse had happened" and that she did not see "anything to suggest that [the abuse] did not actually occur."[47] The state court held that Coy failed to show that such testimony was inadmissible and that, therefore, Coy did not show that his counsel was deficient in failing to object, and that, in any event, Coy failed to show the prejudice prong of the <u>Strickland</u> test.[48] The record reflects that the trial court held a hearing before concluding that Ms. Szczygielski was an expert for the purpose of giving her professional opinion.   Coy does not challenge this ruling.   The record also reflects that Coy's counsel vigorously cross-examined Ms. Szczygielski, establishing that O.S.'s behavior was not conclusive of sexual abuse and could be attributable to something else, that the therapist never questioned O.S. with

---

[46]Reporter's Record, Writ Hearing, Vol. 2, pp. 75, 77-79.

[47]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 13.

[48]<u>Ex parte Coy</u>, Appl. No. WR-65,301-01, p. 243.

-20-

regard to whether the allegation could have been a dream (and that such a dream could produce the symptoms Ms. Szczygielski described), and that one of O.S.'s symptoms, headaches, had gone away when she got glasses.[49]   The court concludes that the state court's decision that Coy did not meet the <u>Strickland</u> burden is a reasonable application of Federal law.   <u>Cf.</u> <u>U.S. v. Simmons</u>, 470 F.3d 1115, 1124 (5th Cir. 2006) ("Mental-health experts are permitted to testify that 'symptoms and recollections appear[] genuine and that [the expert believes she or] he ha[s] not been 'duped' by a fabricated account.") (quoting <u>Skidmore v. Precision Printing & Pkg., Inc.</u>, 188 F.3d 606, 618 (5th Cir. 1999)).[50]

---

[49]Reporter's Record, Vol. 13, pp. 77, 80-82, 84, 85, 94, 98, 105.

[50]Coy also claims that his trial counsel was ineffective for failing to object when Detective Heidi Ruiz testified that the "offense took place on the 1st" and that she was aware that Coy spent the night in his daughter's bed "on the night that the offense occurred."  Reporter's Record, Vol. 11, pp. 180, 193; <u>id.</u>, Vol. 12, pp. 49-50; <u>id.</u> at 13.  Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 13.  The state court found that these statements did not reflect an opinion that O.S. was telling the truth about the sexual assault and that Coy failed to show that his counsel's conduct was deficient or that he was prejudiced by his counsel's failure to object to these statements.  <u>Ex parte Coy</u>, Appl. No. WR-65,301-01, pp. 227, 242.  Coy also complains that Detective Ruiz testified that she had to sign a sworn statement that she believed an offense had taken place in order to get an arrest warrant for Coy.  However, the record reflects that the trial judge had ruled in a prior hearing that Detective Ruiz could testify to that fact and when she testified with regard to O.S.'s credibility, Coy's attorney promptly objected.  Reporter's Record, Vol. 11, pp. 173, 183.  The court concludes that the state court's decision is a reasonable application of the <u>Strickland</u> standard.

**C.   The Possibility of a Civil Lawsuit**

Coy argues that he was deprived of effective counsel because he "failed to conduct a reasonable investigation to determine whether Ramirez had a financial motive to prosecute applicant," did not file a pretrial motion requesting disclosure of whether O.S.'s family intended to file a civil suit against Coy, and did not question O.S.'s mother about her intentions regarding a civil suit.[51]

The state court found that O.S.'s parents did not decide to file a civil lawsuit against Coy until after the criminal trial was over and that, therefore, Coy failed to establish both prongs of the Strickland test.[52] "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."   Miller-El v. Cockrell, 123 S. Ct. 1029, 1041 (2003).   Coy argues that the state court's decision is unreasonable in light of the facts presented at the habeas hearing because he filed the affidavit of Carey Wellmaker, a private investigator, which states:

---

[51]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, pp. 15–17.  O.S.'s parents filed a civil lawsuit after the criminal trial was completed.

[52]Ex parte Coy, Appl. No. WR-65,301-01, pp. 231, 244.

> I [Wellmaker] have been informed that Maryvel Ramirez denied in an affidavit that she told me that she spoke with Ed Hennessey before the criminal trial; that he said that if he filed a civil lawsuit at that time, it would hurt the criminal case; and that he agreed to file a civil lawsuit after the criminal trial was over. I reiterate and can substantiate the contents of my previous affidavit, as I recorded the conversation.[53]

The state court, based on the affidavit of Ms. Ramirez, found that O.S.'s parents were concerned that the prosecutors were not going to be aggressive enough during the trial. For this reason O.S.'s parents went to Mr. Hennessey's office, but spoke only with Mr. Hennessey's assistant to voice their concerns that they thought the prosecutors needed more help. The court concluded that O.S.'s parents never agreed with Hennessey or anyone from his office that they would file a civil lawsuit once the criminal trial was over and that they did not decide to do so until after the criminal trial was over.[54]

The state court was entitled to make a credibility determination between the two affidavits. This court cannot conclude, based on Mr. Wellmaker's affidavit, that Coy has overcome the presumption of correctness by clear and convincing evidence. Because O.S.'s parents did not decide to file a civil lawsuit until after the criminal trial was over, the state court's determination that Coy failed to establish both prongs of the Strickland test is a reasonable application of Federal law.

---

[53]Id., Affidavit of Carey Wellmaker, p. 267.

[54]Ex parte Coy, Appl. No. WR-65,301-01, pp. 231–32.

-23-

**D.   Irrelevant and Prejudicial Testimony**

Coy argues that his trial attorney was ineffective because he opened the door to or failed to object to irrelevant, prejudicial testimony.[55]

### 1.   <u>Testimony that Coy was Grooming His Daughter for Future Sexual Assaults</u>

The first instance Coy points to occurred during the direct examination of Detective Ruiz, who testified that one of the steps in her investigation was to advise the Children's Protective Services agency ["CPS"] that Coy's daughter needed to be interviewed because she felt that his daughter might also be at risk for being sexually assaulted.[56]  On cross-examination Coy's attorney asked, "Is it not true that you in your investigation have absolutely no evidence that [Coy's daughter] has been sexually abused?"  Detective Ruiz answered "That's not correct.  I feel he was grooming her to sexually assault her later on."[57]  Coy's attorney continued to question Detective Ruiz until she admitted that she had no testimonial, physical, or any other evidence that Coy's daughter had been abused.[58]  On redirect the prosecutor asked

---

[55]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 20.

[56]Reporter's Record, Vol. 11, p. 183.

[57]Reporter's Record, Vol. 12, p. 40.

[58]<u>Id.</u> at 41.

Detective Ruiz to explain the term "grooming" to the jury.[59]  Coy's
counsel objected to the question but was overruled.[60]

The state court found that Detective Ruiz's testimony on
direct examination that she recommended that Coy's daughter be
interviewed by CPS was relevant to the course and scope of her
investigation and that it was not evidence that Coy had committed
an extraneous sexual assault, so it was not objectionable on those
grounds.[61]  Coy argues that his trial counsel should have objected
to this testimony because it was irrelevant and inadmissible under
state law.[62]  However, nothing about the state court's finding
regarding the admissibility of Detective Ruiz's initial comment is
contrary to or an unreasonable application of Supreme Court
precedent, and "[i]t is not the province of a federal habeas court
to reexamine state-court determinations on state-law questions."
Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting
Estelle v. McGuire, 112 S. Ct. 475, 480 (1991)).

The state court also found that Coy's attorney decided to
question Detective Ruiz on this matter during cross-examination in

_____

[59]Id. at 50.

[60]Coy's attorney objected that it was an "improper opinion"
and the court answered that he "certainly asked for her [sic] a
whole bunch of opinions.  In any event, she brought up the term
grooming."  Id. at 51-52.

[61]Ex parte Coy, Appl. No. WR-65,301-01, p. 232.

[62]Petition for a Writ of Habeas Corpus of a Person in State
Custody, Docket Entry No. 1, pp. 20-22.

order to convey to the jury that she was biased and overzealous against Coy and therefore not credible and that this is a reasonable trial strategy under the Strickland standard.[63]  Also, because Coy's attorney effectively cross-examined Detective Ruiz and demonstrated her lack of evidence for her opinion, the court held that Coy failed to show that he was prejudiced by his counsel's strategy.[64]  Coy argues that the state court's finding that his counsel's strategy was  reasonable "ignored the fact that, had [counsel] filed a motion in limine or objected to the question on direct examination, he would have had no reason to cross-examine Ruiz on this subject."[65]  However, given the fact that Detective Ruiz's testimony on direct was not objectionable, the state court's determination that Coy failed to establish both prongs of the Strickland test was not an unreasonable application of Federal law.

### 2.   Testimony that Coy Beat Women and Used Drugs

Coy next faults his trial counsel for opening the door to testimony that Coy beat women and used drugs.[66]  The state court found that Coy's attorney cross-examined O.S.'s mother in an attempt to establish that she had once had an affair with Coy and

---

[63]Id. at 244–45.

[64]Id. at 245.

[65]Id. at 21.

[66]Id. at 23.

now harbored a bias against him and therefore had a reason to lie about the molestation charges.[67]  Ms. Ramirez denied the affair on cross-examination but admitted that, prior to the events on September 1, 2001, there came a point where she no longer liked Coy.[68]

Thereafter, Coy's counsel sought to call John Hernandez to testify that Ms. Ramirez told him that she had an affair with Coy. The trial court ruled that doing so would open the door for Ms. Ramirez to rebut her testimony about why she disliked Coy.[69] In the state habeas hearing Coy's counsel testified that he decided to call Mr. Hernandez to the stand despite the court's ruling because he reasoned that the trade-off was worth it.[70]  When the State recalled Ms. Ramirez in rebuttal and asked her why she did not like Coy she responded, "[H]e beat up on his wife and current girlfriend.  He's rude, he does drugs and he cheats on his wife."[71]

Coy alleges that his counsel's decision to open the door to this testimony was not reasonable trial strategy because, "as a result of an inadequate investigation, he did not know that Hernandez would testify that [Coy] had signed an agreement to give

---

[67]Ex parte Coy, Appl. No. WR-65,301-01, p. 233.

[68]Reporter's Record, Vol. 10, p. 135.

[69]Reporter's Record, Vol. 14, pp. 3-9.

[70]Reporter's Record, Writ Hearing, Vol. 2, pp. 74-75.

[71]Reporter's Record, Vol. 16, p. 27.

$100,000 to Hernandez, that Hernandez had been in rehab for alcohol, and that Hernandez had no reason to disbelieve Ramirez about the sexual abuse."[72]  However, the record reflects that Coy's counsel interviewed Mr. Hernandez before calling him to the stand.[73] Additionally, Mr. Hernandez testified that he had not been friends with Coy for eight years, that he had not been given anything in consideration for Coy's "promise," and that he never expected Coy to pay him anything.[74]  Applying Strickland's strong presumption that counsel's actions fall within the wide range of reasonable professional assistance, this court cannot conclude that the state court's decision was an unreasonable application of the first prong of the Strickland test.  Furthermore, given the fact that this strategic decision brought the affair to the attention of the jury, Ms. Ramirez's testimony does not undermine confidence in the outcome of the trial, making the state court's decision a reasonable application of the Strickland test's second prong.

---

[72]Reporter's Record, Vol. 14, pp. 23-26.

[73]Reporter's Record, Writ Hearing, Vol. 2, pp. 70-71.  In fact, Coy's counsel testified in the state habeas hearing that it was Coy and his family who suggested putting Mr. Hernandez on the stand to prove the affair.  Id. at 70.  "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms,' which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.' . . . 'Every effort [must] be made to eliminate the distorting effects of hindsight.'"  Wiggins v. Smith, 123 S. Ct. 2527, 2536 (2003) (quoting Strickland, 104 S. Ct. at 2052).

[74]Reporter's Record, Vol. 14, pp. 24-27.

3.   <u>Mention of Coy's Record Company's Name</u>

Coy alleges that his trial counsel was ineffective for failing to file a motion in limine and objecting to testimony that the name of his record company is "Dope House Records."[75]   The state court found that (1) the name of the company was used only three times during the trial, (2) the State never used the name to imply that Coy engaged in criminal activity, (3) Coy's attorney believed that the word "dope" had several positive connotations in the rap and hip-hop culture and was comfortable with the term and did not believe that it carried a negative connotation, and (4) Coy therefore failed to establish deficient performance or prejudice.[76]

The record reflects that Detective Ruiz stated that the business owned by Coy and his brother "is Dope House Records" and that Ms. Ramirez testified that Arthur Coy "is the president of Dope House Records, and he's in charge of all the money."[77]   Also, during summation the prosecutor stated that Coy's brother, Arthur, was "the money guy for Dope House Records who runs Coy's entertainment company."[78]   The court concludes that the state court's decision was not objectively unreasonable in light of the evidence in the record.

---

[75]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, pp. 25-26.

[76]<u>Ex parte Coy</u>, Appl. No. WR-65,301-01, pp. 235, 246.

[77]Reporter's Record, Vol. 12, p. 10; Reporter's Record, Vol. 16, p. 30.

[78]Reporter's Record, Vol. 17, p. 57.

**E.    Testimony that O.S.'s Grandfather Died After Learning of the Allegations**

Coy next reiterates his argument that his trial counsel was constitutionally ineffective for not objecting to Ms. Ramirez's testimony about her father's death.[79]   On cross-examination Coy's attorney asked Ms. Ramirez questions about therapy she had received to deal with the allegations in the criminal trial.[80]  This was done in an attempt to obtain the therapist's records because Coy's counsel believed they might contain prior inconsistent statements by Ms. Ramirez that could be used to impeach her.[81]   Ms. Ramirez answered that she had sought counseling regarding Coy "molesting [her] child."[82]   On redirect Ms. Ramirez testified that she also sought therapy to deal with the death of her father, who died from a heart attack the day after finding out about the abuse.[83] Ms. Ramirez stated that "He said he couldn't take it.  He told my mother."[84]  Afterwards, Coy's counsel re-urged his request for the therapist's records.[85]

---

[79]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, pp. 27-29.

[80]Reporter's Record, Vol. 16, pp. 43-44.

[81]Ex parte Coy, Appl. No. WR-65,301-01, p. 236.

[82]Reporter's Record, Vol. 16, p. 44.

[83]Id. at 47.

[84]Id.

[85]Id. at 64-65.

The state court found that Ms. Ramirez's testimony about her father's death was relevant to the matter of why she was in therapy and that Coy's attorney did not believe that it adversely affected the jury.[86]  The state court also found that her testimony was not offered for the truth of the matter asserted, namely, that her father died of a heart attack upon learning of the sexual assault, but rather was offered as further reason for Ms. Ramirez receiving therapy.[87]  Based on these findings the state court concluded that Coy failed to show that his trial counsel was deficient or that he suffered prejudice from his counsel's conduct.[88]

Coy argues that his attorney should have objected to the testimony about Ms. Ramirez's father because it constituted inadmissible victim-impact evidence and hearsay because it was offered to prove the truth of the matter asserted.[89]  However, nothing about the state court's finding regarding the admissibility of Ms. Ramirez's testimony is contrary to or an unreasonable

---

[86]Ex parte Coy, Appl. No. WR-65,301-01, p. 237.

[87]Id.

[88]Id. at 246.

[89]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, pp. 28-29.  Coy also argues that this testimony was offered for the truth of the matter asserted because the prosecutor mentioned this testimony during summation. However, "[a] prosecutor's assertion of what he believes the evidence will show and has shown is not error."  Ortega v. McCotter, 808 F.2d 406, 410 (5th Cir. 1987) (citing United States v. Morris, 568 F.2d 396, 401 (5th Cir. 1978).  See also supra note 41 and accompanying text.

application of Supreme Court precedent, and "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 112 S. Ct. 475, 480 (1991)).  Because the statements were not offered for the truth of the matter asserted, the state court's decision regarding Coy's counsel's failure to object was a reasonable application of the Strickland test.[90]

**F.   Prosecutor's Argument that O.S.'s Testimony was Uncontradicted**

Coy next claims that his trial counsel was constitutionally ineffective for failing to object when the prosecutor made remarks that the State's case was uncontradicted, thereby commenting on Coy's failure to testify.[91]  During summation the prosecutor argued:

> But this is basically what it is we have to prove.  It's this Defendant, Carlos Coy, and, you know, that has not been contradicted by a bit of

---

[90]Coy also argues that his attorney should have questioned Ms. Ramirez about her therapy outside the presence of the jury pursuant to Texas Rule of Evidence 104(c).  Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 28.  Rule 104(c) states that "hearings on preliminary matters shall be conducted out of the hearing of the jury when the interests of justice so require . . ."  Tex. R. Evid. § 104(c).  The record reflects that Coy's counsel had two hearings outside the presence of the jury regarding the discovery of the therapist's records.  Reporter's Record, Writ Hearing, Vol. 2, pp. 48-49.  The court therefore concludes that the state court's decision was a reasonable application of Federal law as determined by the Supreme Court.

[91]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 29.

testimony.  It's this Defendant, Carlos Coy.  No
doubt about it.

That it happened on or about September 1st,
2001, Labor Day weekend.  Are you tired of hearing
about it?  Labor Day weekend, Saturday night at
Carlos Coy's house.

That it happened in Harris County, Texas.  We
know it happened at his house on Cayton Street.
Even got the pictures in evidence if you want to
take a look at them.

Totally  uncontradicted  by  any  testimony
whatsoever.

Further in the indictment we have to prove that
it  was  this  child,  [O.S.].    And  that  is
uncontradicted that it's this child.  And the
Defendant  intentionally  and  knowingly  caused  the
sexual organ of the little girl to contact his
mouth.

And you heard testimony that his tongue licked
her vagina.  The tongue is part of the mouth.
Further that this child is under 14, nine years old.
That's not contradicted by any testimony.  And
certainly that she is not his spouse.

Ladies and gentlemen, that is all that the
State of Texas has to prove to you.[92]

The Fifth Amendment prohibits the government from commenting
on the fact that a defendant failed to testify.  <u>Griffin v.
California</u>, 85 S. Ct. 1229, 1233 (1965).  A prosecutor's comment is
improper if (1) it was the prosecutor's "manifest intention to
comment on the accused's failure to testify" or (2) the comment
"was of such a character that the jury would naturally and
necessarily take it to be a comment on the failure of the accused

_____

[92]Reporter's Record, Vol. 17, pp. 46-47.

-33-

to testify." United States v. Rochan, 563 F.2d 1246, 1249 (5th Cir. 1977). "While it is improper to comment upon the failure of a defendant to take the stand, it is well established that one may point out that the testimony of witnesses is uncontradicted, particularly where someone other than the defendant could have offered contrary evidence." United States v. Jennings, 527 F.2d 862, 871 (5th Cir. 1976).

The state court found that the prosecutor did not argue that the element of whether the applicant actually committed the act of sexual assault was uncontradicted, only that Coy's identity and other elements were uncontradicted.[93] The court further found that Coy's counsel agreed with this interpretation of the prosecutor's remarks and that his decision not to object was consistent with his strategy of not attacking O.S.'s credibility.[94] Given the trial counsel's strategy of limiting his objections, the fact that there was a benign explanation for the prosecutor's remarks, and the fact that contradictory evidence could have been offered on cross-examination of O.S., this court cannot conclude that it was an unreasonable application of Strickland for the state court to determine that Coy did not establish that his counsel was deficient for failing to object to the prosecutor's remarks.

_____

[93]Ex parte Coy, Appl. No. WR-65,301-01, p. 237.

[94]Id. at 238.

-34-

**G.   Arguments Attacking Defense Counsel**

Coy's final argument is that his trial counsel was ineffective for unreasonably inviting and then failing to repeatedly object to the prosecutor's arguments attacking him for "trying to hide the truth and keep [Coy] out of jail for a fee."[95]   During summation Coy's attorney argued that O.S. "is the product of [the prosecutor's] overzealous efforts to convict someone she wants so badly to convict;"[96] that the prosecutor overreached in questioning a defense expert;[97] that the prosecutor was on a "witch hunt to convict this popular guy;"[98] and that "in a final act of desperation," the prosecutor talked out of both sides of her mouth in criticizing the defense for failing to test the bed sheets.[99]

During her rebuttal summation the prosecutor responded as follows:

> [T]hey don't want you to look at the evidence and the truth.

> Our job as prosecutors is to seek the truth. That's not his job.  His job is to represent Carlos Coy.

> MR. LEWIS:  Your Honor, I'm going to object. My job is the same as theirs.

---

[95]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 31.

[96]Reporter's Record, Vol. 17, p. 72.

[97]Id. at 82.

[98]Id. at 83.

[99]Id. at 102.

MS. ANDREWS: I'm responding to the direct attacks on the prosecution.

THE COURT: Overruled.

MS. ANDREWS: His job is to represent Carlos Coy, keep him from going to jail. That's what he gets paid to do. Ms. Oncken and I get paid --

MR. LEWIS: I'm going to object, Your Honor, the State of Texas gets paid just like I do. Improper argument.

THE COURT: Overruled.

MS. ANDREWS: Ms. Oncken and I get paid to prosecute people who abuse children. And I can tell you we've got enough work to do without having to manufacture a case. We don't care that he's a rapper or a musician --

MR. LEWIS: Your Honor, I'm going to object. Ms. Andrews' personal feelings are improper.

THE COURT: Overruled.

MS. ANDREWS: It's not important to us who he is or how much money he has because of the fact that he molested a nine-year-old little girl and that is the only reason that we're here today. The only one. Because [O.S.] deserves justice whether or not he has enough money to hire experts, to have a great lawyer to come in here and spin the truth, because we're here to decide the truth and we all know the truth. It's what [O.S.] told.[100]

. . .

We've proven our case beyond a reasonable doubt because we've put forward a truthteller, as the Defense called her. She is an honest little girl and she told you what happened. The dream, the revenge, all the other rabbit trails that the Defense has wanted you to go down are just that, they're just defense tactics because they're the ones that are desperate.

---

[100]Reporter's Record, Vol. 17, pp. 120-21.

> We're just putting forth the facts and the
> truth.  They're trying to hide the truth.  That's
> his job.[101]

The state court found that all of the prosecutor's comments were invited by Coy's counsel during summation and made in response thereto, and therefore were not objectionable.[102]  The court also found that part of the defense's strategy was to cast O.S. as a "truth teller" who was manipulated by various state actors, especially the prosecutors, for the sole purpose of convicting Coy at all costs, that his argument during summation was consistent with this strategy, and that this trial strategy was reasonable.[103] Based on these findings the state court concluded that Coy's counsel was not deficient and that, in the alternative, Coy had failed to show prejudice from his counsel's conduct.[104]

Coy argues that his counsel's summation argument was "profoundly unreasonable" because it invited the prosecutor's rebuttal.[105]   However, Strickland's strong presumption that counsel's actions fall within the wide range of reasonable professional assistance precludes this court from concluding that

---

[101]Id. at 125.

[102]Ex parte Coy, Appl. No. WR-65,301-01, p. 239.

[103]Id.

[104]Id. at 248.

[105]Petition for a Writ of Habeas Corpus of a Person in State Custody, Docket Entry No. 1, p. 35.

-37-

the state court's decision in this case was an unreasonable application of the first prong of the Strickland test. Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("[the court] is careful not to second guess legitimate strategic choices."). Furthermore, given the fact that Coy's attorney objected three times during the prosecutor's rebuttal, stating "[m]y job is the same as theirs" and "the State of Texas gets paid just like I do," the prosecutor's remarks do not undermine confidence in the outcome of the trial, making the state court's decision a reasonable application of the Strickland test's second prong.

Although Coy argues that his counsel's failure to make continued objections to the prosecutor's statements constituted deficient performance, the state court found that all of the prosecutor's comments were not objectionable.  Nothing about this finding is contrary to or an unreasonable application of Supreme Court precedent and "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 112 S. Ct. 475, 480 (1991)). Furthermore, the record reflects that Coy's counsel objected three times and testified in the state habeas hearing that part of his trial strategy was to limit his objections to avoid alienating the jury.  See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992) ("[Petitioner's counsel] could reasonably have decided not to risk

antagonizing the jury by objecting, or he could have decided that his best strategy was to let his own closing argument speak for itself.  Whatever the reason he chose not to object, we do not view his conduct as ineffective assistance.").  For these reasons the state court's determination that Coy failed to establish both prongs of the Strickland test is a reasonable application of state law.

## IV.  Conclusion and Order

For the reasons explained above, Respondent Quarterman's Motion for Summary Judgment (Docket Entry No. 8) is **GRANTED**, and Coy's Petition for a Writ of Habeas Corpus of a Person in State Custody (Docket Entry No. 1) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 13th day of June, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE